**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jun 27 2014, 9:29 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS M. BARR**
Thomas M. Barr & Associates
Nashville, Indiana

ATTORNEY FOR APPELLEE:

**CATHERINE STAFFORD**
Stafford Law Office, LLC
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY ALLEN GOSNEY, JR., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1310-DR-452 |
| | ) | |
| TERI GOSNEY, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Valeri Haughton, Judge
Cause No. 53C08-1206-DR-314

**June 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Jeffrey Allen Gosney, Jr. ("Father") appeals the dissolution court's decree of dissolution of his marriage to Teri Gosney ("Mother"). Father presents several issues for our review, which we consolidate and restate as:

1. Whether the dissolution court abused its discretion when it adopted Mother's proposed findings and conclusions "virtually verbatim."

2. Whether the dissolution court abused its discretion when it ordered him to pay child support while he is incarcerated.

3. Whether the dissolution court abused its discretion when it divided the marital estate.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

After living together for five years, Father and Mother married in March 1999, and they have three children together. Each party also has one child from a previous marriage. In June 2012, Mother filed a petition for dissolution of the marriage. And in August 2012, the dissolution court entered a provisional order for Father to pay $62 per week in child support. In December 2012, the parties submitted an Agreed Entry to the dissolution court whereby the parties resolved certain issues involving personal property, including several guns. The dissolution court approved that Agreed Entry regarding the provisional division of personal property.

On March 5, 2013, Father was convicted of sexual misconduct with a minor, as a Class C felony, and the trial court sentenced him to four years executed. Father had committed the offense against Mother's daughter from her previous marriage. At the time of the final dissolution hearing, Father's expected release date was March 30, 2014.

Following the final hearing on April 4, 2013, the dissolution court found and concluded in relevant part as follows:

Custody, Parenting Time and Child Support

7) There were three children born of this marriage; namely, [J.G.], born July 8, 1995; [I.G.], [born] November 19, 2006; and [C.G.], [born] April 3, 2009.

8) Mother is a fit and proper person to have sole custody of the children.

9) Father is currently serving a sentence for Class C Felony, Sexual Misconduct with a Minor, IC [§] 35-42-4-9(b)(1) at the New Castle Correctional Facility. This conviction is the result of a guilty plea made by the Father, to charges stemming from sexual misconduct with his step-daughter, Mother's daughter, [M.M.] His earliest projected release date is March 30, 2014.

* * *

11) A Guardian Ad Litem was appointed for the children in this matter. Her report included an interview with a female cousin of [Father]'s who said that [Father] had molested her when she was a young child. The Guardian Ad Litem's report concluded that "the evidence demonstrates that [Mother]'s concerns that [Father] molested [M.M.] when she was a child and that [Father] was inappropriate with [I.G.] are well founded." The Guardian Ad Litem further noted that for their own safety the children should not be alone with their father, and that [Father] should undergo treatment relating to his conviction for sexual misconduct with a minor.

12) At the provisional hearing, the Court ordered supervised parenting time for the two younger children, [I.G. and C.G.], with [J.G.] seeing his father when and if he chose. As of the final hearing date, no parenting time between the Father and any of the children had occurred. The children have not seen their father since March 2012.

13) [J.G.], the oldest child, will turn 18 on July 8, 2013, and therefore there is no need for the Court to make a provision for parenting time between [Father] and [J.G.] However, as to [I.G. and C.G.], the Court finds that the Guardian Ad Litem's recommendation is reasonable and appropriate under the circumstances, and that it is in their best interests to have a relationship with their father. The Court therefore adopts that recommendation, to commence following [Father]'s release from incarceration. The Court

3

further adopts and incorporates herein by reference Section I of the Indiana Parenting Time guidelines.

14) Given the fact that Father is in prison at present, the Court defers issues of parenting time and orders no parenting time.

15) While Father is in jail, no child support shall be ordered. However pursuant to IC [§] 31-16-6-3, the Court sets apart property from the marital estate that is necessary and proper for the support of the children. This property shall come from the Father's share of the marital estate.

16) The Court finds that if Father were not in jail, he would be earning at least minimum wage, or $290 a week. With Mother's earnings of $669 per week, pursuant to Child Support Guidelines, the Father would pay $83 per week for the support of his three children. Had the father not gone to jail the day after the final hearing in this matter, the Court would have ordered this support to begin Friday, April 5, 2013.

17) This support order would be in effect until [J.G.], the oldest of the three children, turns 19 on July 8, 2014 at the earliest.

18) The Court orders that child support of $83 per week be set aside from the Father's share of the marital property until [J.G.] turns 19, or until July 8, 2014. Since there are 65 weeks between April 5, 2013 and July 8, 2014, this amount is calculated as follows: 65 x $83=$5,395.00.

19) Pursuant to Hartley v. Hartley, 862 N.E.2d 274 (Ind. Ct. App. 2007), it is not necessary for the Court to find that such a trust is necessary to insure that the parent pays the child support. Thus the Court makes no such finding, at least after March 30, 2014, although the Court does note that it might take some time for Father to become gainfully employed after his release from prison in March 2014. The Court further notes that this Order may be modified in the event that [J.G.] goes to college, so that in addition to child support payable to [J.G.]'s 19th birthday, Father may be ordered to pay toward college expenses for [J.G.]

20) At the time of the final hearing, the Father was $248 behind in child support. Having been ordered to pay $62 at the provisional hearing August 6, 2012, the calculation is made as follows: 34 weeks x $62 = $2,108 - $1,860 paid = $248.

21) Thus, the total amount which should be set aside in trust to pay support for the children, to be taken from Father's share of the marital estate is $5,395 + $248 = $5,643.

4

* * *

MARITAL PROPERTY AND DEBT

24)   At the time of the dissolution of the marriage, the parties were substantially free from debt, so it is not necessary to make divisions regarding debt.  Each party shall be responsible for debts incurred in his or her own name after the separation and shall hold the other party harmless.

25)  The parties' largest asset is the marital residence located at 6237 Holly Drive, Ellettsville, IN 47429.  An appraisal, jointly obtained and paid for by the parties, was submitted showing the fair market value of the home to be $102,000.  The mortgage remaining on the property is approximately $62,000, the home equity loan on the property having been forgiven. Mother has been living in the marital residence since the parties' separation in March 2012 and has been paying the mortgage since May 2012.

* * *

28)  The anticipated equity in the house is approximately $40,000.

29)  Other items in the marital estate as of the date of the parties' separation are as follows:

| | |
|---|---|
| Checking account IUCU Allen Gosney | $884.00 |
| Checking account IUCU Teri Gosney | $805.00 |
| Thrivent Whole life insurance policy Allen Gosney | $13,985.00 |
| Indiana Farm Bureau whole life insurance policy Teri Gosney | $13,727.00 |
| Fifteen guns | $675.00 |
| 2001 Grand Caravan Sport Van (145,204 miles) | $2,846.00 |
| 2001 Ford Explorer (100,000 miles) | $3,618.00 |
| 1993 Dodge Ram Truck (200,000 [miles]) | $4,007.00 |
| Total: | $40,547.00 |

The total amount of marital property is approximately $80,547.00.

30)  Each parties' share would be $40,274 if the strict 50% division were followed.  However, $5,643 should be set aside in trust in order to pay Father's child support, and this amount should come from the Father's share of the marital property.  Because Mother will be trustee of this amount, this should be added to her share, so that her share is $40,274 plus $5,643 = $45,917.

5

31) However, Father used substantial marital assets in order to pay his criminal attorney ($10,000), his bail bond for the criminal charges ($7,500), and during the time of his home detention, $485 per month to Monroe County Community Corrections.

32) Specifically, Father testified at the provisional hearing that he cashed in the Thrivent insurance policy ($13,985), sold a trailer for $3,350 and used all but $716 of the parties' 2011 tax refund of $6,947, an amount totaling $23,556. (The Court ordered Allen to return $716 to Teri in the Court's provisional order of August 6, 2012, which he did.) This amount was used to pay bail bond, hire and pay an attorney, set up separate housekeeping and pay criminal fees. By Father's own admission at the provisional hearing, almost none of it went to support the family.

33) The Father's Thrivent account has been cashed out and spent. The Mother also cashed out her insurance policy from Farm Bureau, but still has this policy [sic] in a bank account in her name.

34) This use of marital assets to defend on a charge to which he eventually pled guilty constitutes dissipation of marital assets. At least $17,500 of this amount which he spent is directly attributable to the criminal charges. Father has already spent this money and it is unlikely that it will ever be recovered without awarding Mother a larger than 50% share of marital property. This amount should thus be removed from the Father's side of the ledger and added to the Mother's side.

35) Thus, Mother's share of the marital pot should be at least $45,917 [(]her half of the marital estate, plus $5,643 to be held in trust to insure child support is paid[)], plus $17,500 to make up for Father's dissipation of marital assets, for a total of $63,417. Father's share should be reduced accordingly.

36) Because the Thrivent account has already been spent, the Court cannot award it to anyone. However, if the parties realize any more than $40,000 in equity from the sale of the house, Mother should get whatever portion of the proceeds [is] necessary in order to bring her up to $63,417.

37) The Court thus orders the following disposition of property:

To Teri Gosney:
Checking Account IUCU Teri Gosney                805.00
Indiana Farm Bureau life insurance policy—
Teri Gosney                                    13,727.00
Fifteen guns                                      675.00

6

| | |
|---|---|
| 2001 Grand Sport Caravan | 2,846.00 |
| 2001 Ford Explorer (100,000 miles) | 3,618.00 |
| Proceeds from sale of marital residence   up to | 41,746.00 |
| | |
| | $63,417.00 |

| | |
|---|---|
| To Allen Gosney: | |
| Checking Account IUCU Allen Gosney: | $884.00 |
| 1993 Dodge Ram Truck | $4,007.00 |
| | |
| | $4,891.00 |

In the event that the parties realize more than $41,746 in proceeds from the sale of the house, so that Mother realizes $63,417, the parties should split anything above $41,746 50/50.

38)   The parties have already split items of personal property pursuant to prior agreed order of December 14, 201[2].   Father still is to return the bows, fishing poles, [J.G.]'s duffel bag and other property noted in this listing, including the 9 mm gun given by Teri's father to Allen and the 380 owned by Teri.   Father must cause this property to be returned to Mother no later than fifteen (15) days from the date of this Decree.

39)   In addition, the Court awards Allen the following property:   Tools and Equipment in Shed, Table saw, Router table . . . , Tomato cages, Boat behind the shed (John boat).

The remainder of the property located at the marital residence is awarded to Teri. . . .

Appellant's App. at 9-15.  This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

In Trabucco v. Trabucco, 944 N.E.2d 544, 548-49 (Ind. Ct. App. 2011), trans. denied, we set out the applicable standard of review where, as here, a party requests that the trial court issue findings and conclusions.

7

When findings and conclusions thereon are entered by the trial court pursuant to the request of any party to the action, we apply a two-tiered standard of review.

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

Id. (quoting Balicki v. Balicki, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2005), trans. denied) (internal citations omitted).

### Issue One: Findings and Conclusions

Father first contends that the dissolution court committed reversible error when it adopted Mother's proposed findings and conclusions "virtually verbatim." Appellant's Br. at 15. In In re Marriage of Nickels, 834 N.E.2d 1091, 1096 (Ind. Ct. App. 2005), we addressed this practice as follows:

> As our supreme court has observed, the practice of accepting verbatim a party's proposed findings of fact "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." Cook v. Whitsell-Sherman, 796 N.E.2d 271, 273 n.1 (Ind. 2003) (citing Prowell v. State, 741 N.E.2d 704, 708-09 (Ind. 2001)). However, as the court also noted, verbatim reproductions of a party's submissions are not uncommon, as "[t]he trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources

that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning." Prowell, 741 N.E.2d at 708. The need to keep the docket moving is properly a high priority for our trial bench. Id. at 709. For this reason, the practice of adopting a party's proposed findings is not prohibited. Id. Thus, although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous. See Saylor v. State, 765 N.E.2d 535, 565 (Ind. 2002) (citing Woods v. State, 701 N.E.2d 1208, 1210 (Ind. 1998)).

(Emphasis added).

Father maintains that the dissolution court contradicted itself when it adopted the recommendation of the Guardian Ad Litem regarding supervised parenting time "to commence following [Father]'s release from incarceration" and then, in the very next paragraph, "defer[red] issues of parenting time and order[ed] no parenting time." Appellant's App. at 10-11. We agree with Father that those orders are inconsistent, and we cannot resolve the inconsistency on appeal. Accordingly, we remand to the dissolution court with instructions to clarify its conclusion on the issue of parenting time.

Father also asserts that the dissolution court appears not to have considered the statutory criteria for deviating from the presumption of an equal division of the marital estate and "totally disregarded" his proposed conclusions of law regarding the marital estate and the alleged dissipation of assets. Appellant's Br. at 17. Because we address these substantive issues in Issue Three, below, we do not address Father's contentions on these issues in the context of the dissolution court's adoption of Mother's proposed findings and conclusions.

9

**Issue Two: Child Support**

Father contends that the dissolution court abused its discretion when it calculated his child support obligation. A trial court's calculation of child support is presumptively valid. Young v. Young, 891 N.E.2d 1045, 1047 (Ind. 2008). We will reverse a trial court's decision in child support matters only if it is clearly erroneous or contrary to law. Id. A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court. Id.

> In his proposed findings and conclusions, Father stated in relevant part as follows:
>
> On August 6, 2012, [Father] was ordered to pay $62.00 per week in child support, beginning August 10, 2012. Despite the fact that he will have no income during his incarceration, provided he is awarded one-half of the equity in the marital home, [Father] has agreed to continue to pay that amount.

Appellant's App. at 44. The dissolution court did award Father one-half of the equity in the marital home, but the court ordered Father to pay $82 per week in child support. On appeal, Father "does not dispute the court's authority under [Indiana Code Section] 31-16-6-3 to set apart a portion of the property of a parent that appears necessary and proper for the support of a child." Appellant's Br. at 25. But Father maintains that the dissolution court erred when it ordered him to pay $82 per week in child support based on imputed earnings of the federal minimum wage when his work history shows that he had consistently earned less than the minimum wage prior to his incarceration.

In support of his contention on this issue, Father cites to our supreme court's opinion in Lambert v. Lambert, 861 N.E.2d 1176, 1177 (Ind. 2007), where the court held that "in determining support orders, courts should not impute potential income to an

10

imprisoned parent based on pre-incarceration wages or other employment-related income, but should rather calculate support based on the actual income and assets available to the parent." And in Lambert, the court concluded that a dissolution court may order child support based on pre-incarceration income during a noncustodial parent's incarceration if there are "other means" for payment, such as that parent's "portion of the property division[.]" Id. at 1182.

Father relies on that part of the Lambert holding prohibiting imputed income for incarcerated parents, but he ignores that part of the holding expressly permitting a dissolution court to calculate support "based on the actual income and assets available to the parent." See id. at 1177. Here, while the dissolution court imputed income to Father at the level of the federal minimum wage, the court also considered Father's share of the marital estate in calculating the child support order. Father has not demonstrated that the dissolution court's child support order is clearly erroneous.

### Issue Three:  Marital Estate

The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. Keown v. Keown, 883 N.E.2d 865, 868 (Ind. Ct. App. 2008). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances presented. Id. When we review a challenge to the trial court's division of marital property, we may not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence most favorable to the trial court's disposition of marital property. Id.

11

Father contends that the dissolution court abused its discretion in several respects in the valuation and distribution of the marital estate. We address each contention in turn.

## Thrivent Life Insurance Policy

Father first contends that the dissolution court erred when it included his Thrivent life insurance policy, valued at $13,985, in the marital estate. But in his proposed findings and conclusions, Father stated that he "agreed to include the Thrivent funds in the marital estate." Appellant's App. at 52. Thus, any error was invited error, and Father cannot now complain. See Balicki, 837 N.E.2d at 541.

## Statutory Factors

Father next maintains that the dissolution court did not adequately consider the statutory factors relevant to a division of the marital estate. Indiana Code Section 31-15-7-5 provides as follows:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> > (A) before the marriage; or
> >
> > (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence

for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

    (A) a final division of property; and

    (B) a final determination of the property rights of the parties.

And in Helm v. Helm, 873 N.E.2d 83, 90 (Ind. Ct. App. 2007), we explained that

> [a] trial court . . . generally may not rely on just one of the factors listed in Indiana Code section 31-15-7-5 in determining that an unequal division would be warranted, but must consider the factors "in conjunction with relevant evidence regarding other statutorily prescribed factors, and with any evidence demonstrating additional reasons that an unequal distribution would be just and reasonable." Eye v. Eye, 849 N.E.2d 698, 702 (Ind. Ct. App. 2006). This is not to say, however, that a trial court is required to explicitly address all statutory factors in all cases. It follows that a trial court would not be required, for example, to consider findings regarding statutory factors not implicated by the evidence.
>
> Moreover, "[t]he trial court's exclusion of [statutory] factors from its written findings does not mean that it did not consider them." Shumaker v. Shumaker, 559 N.E.2d 315, 318 (Ind. Ct. App. 1990). "We presume the trial court considered all the evidence of record and properly applied the statutory factors." Id. "The statute does not require the trial court to list those factors that do not justify the unequal division of property." Id. "The trial court need only 'state its reasons for deviating from the presumption of an equal division.'" Id. (quoting In re Marriage of Davidson, 540 N.E.2d 641, 646 (Ind. Ct. App. 1989)).

Here, the dissolution court initially divided the marital estate in half, awarding each party $40,274. But the dissolution court then ordered that $5,643 out of Father's half would be set aside in trust to cover his child support obligation while he was incarcerated. And the dissolution court concluded that Father's "use of marital assets to defend on a charge [of sexual misconduct with Mother's daughter,] to which he

13

eventually pled guilty[,] constitutes dissipation of marital assets." Appellant's App. at 13. The dissolution court ordered that the $17,500 Father had spent related to the criminal proceedings "should thus be removed from Father's side of the ledger and added to the Mother's side." Id. at 14.

On appeal, Father contends that the dissolution court erred when it awarded Mother more than half of the marital estate without making findings or conclusions on any of the factors in Indiana Code Section 31-15-7-5 other than the dissipation factor. But the dissolution court divided the marital estate equally and deducted from Father's award only enough to cover Father's child support obligation and the amount of money Father spent on his criminal proceedings. Thus, other than the child support order and the dissipation of assets, the dissolution court did not deviate from the presumptive equal division of the marital estate. And the dissolution court properly stated its reasons for setting those amounts over to Mother. See Helm, 873 N.E.2d at 90. Father has not demonstrated that the dissolution court erred when it stated its reasons for Mother's award.

Father also contends that, while "for the sake of this argument the court could have properly determined that the $17,500.00 he spent for attorney's fees and bail bonds related to the criminal charges . . . could be considered dissipation" of marital assets, the dissolution court erred when it awarded Mother the entire amount of the dissipated assets. Appellant's Br. at 20. In support of that contention, Father cites to this court's opinion in In re Sloss, 526 N.E.2d 1036, 1040 (Ind. Ct. App. 1988), where we observed that "a trial court may not compensate a party for pre-separation dissipation." But here, the parties

14

separated on March 8, 2012, and on March 27, 2012, Father cashed in his Thrivent policy to pay his attorney and other fees related to his criminal case. Thus, the dissipation occurred post-separation, and Father's reliance on Sloss is misplaced.

Nevertheless, the dissolution court erred when it calculated and divided the marital estate. In particular, the total marital assets calculated by the dissolution court include only $13,985 (the Thrivent account proceeds) of the $17,500 in dissipated assets. On remand, we instruct the dissolution court to calculate the marital estate as follows:

| | |
|---|---|
| Equity in marital residence | $40,000.00 |
| Checking account IUCU Allen Gosney | $884.00 |
| Checking account IUCU Teri Gosney | $805.00 |
| Thrivent Whole life insurance policy Allen Gosney | $13,985.00 |
| Dissipated assets other than Thrivent policy | $3,515.00 |
| Indiana Farm Bureau whole life insurance policy Teri Gosney | $13,727.00 |
| Fifteen guns | $675.00 |
| 2001 Grand Caravan Sport Van (145,204 miles) | $2,846.00 |
| 2001 Ford Explorer (100,000 miles) | $3,618.00 |
| 1993 Dodge Ram Truck (200,000 [miles]) | $4,007.00 |
| | |
| Total: | $84,062.00 |

Each party's share under the presumptive equal division of the marital estate would be $42,031. But Father dissipated $17,500, so his amount is reduced to $24,531. Mother's share is increased by $5,643 for the child support order, and Father's share is diminished by that amount, which leaves $47,674 to Mother and $18,888 to Father. Thus, the dissolution court shall divide the marital estate as follows:

To Teri Gosney:

| | |
|---|---|
| Checking Account IUCU Teri Gosney | $805.00 |
| Indiana Farm Bureau life insurance policy— | |

15

| | |
|---|---|
| Teri Gosney | $13,727.00 |
| Fifteen guns | $675.00 |
| 2001 Grand Sport Caravan | $2,846.00 |
| 2001 Ford Explorer (100,000 miles) | $3,618.00 |
| Proceeds from sale of marital residence | $26,003.00 |
| | $47,674.00 |
| To Allen Gosney: | |
| Checking Account IUCU Allen Gosney: | $884.00 |
| 1993 Dodge Ram Truck | $4,007.00 |
| Proceeds from sale of marital residence | $13,997.00 |
| | $18,888.00 |

If the sale of the marital residence results in more than $40,000 in equity, the excess shall be divided equally between the parties. And if the sale of the marital residence results in less than $40,000 in equity, then the parties' respective amounts shall each be reduced by half of the difference between $40,000 and the equity actually realized.

### Personal Property

Father also contends that the dissolution court abused its discretion when it awarded to Mother thirteen guns the parties had agreed would be awarded to Father. In particular, in their Agreed Entry approved by the dissolution court on December 14, 2012, the parties agreed that Mother would "deliver[] to the Monroe County Sheriff's Department" thirteen guns to hold for Father until the expiration of a protective order in effect at that time. Appellant's App. at 30-31. And during the final hearing, the parties reminded the dissolution court about the Agreed Entry and stated that they were "not going to go back and revisit" the division of items of personal property addressed therein. Transcript at 4. In the final decree, the dissolution court awarded all of the guns to Mother.

Father maintains that "where a stipulation is offered in court and no objection is made, the parties are bound by the stipulation," citing Vicarro v. City of Fort Wayne, 449 N.E.2d 1161, 1162-63 (Ind. Ct. App. 1983). But while Father characterizes the parties' acknowledgement of the Agreed Entry and their agreement that those issues would not be revisited at the final hearing as a stipulation, the parties did not expressly stipulate to Father being awarded the guns. Our review of the record indicates that the parties merely agreed that they would not make argument at the final hearing on the issues covered by the Agreed Entry. Indeed, in her proposed findings and conclusions, Mother asked that she be awarded the guns.

The Agreed Entry was a provisional order, and provisional orders terminate upon the entry of the final decree of dissolution. See Ind. Code § 31-15-4-14; Trabucco, 944 N.E.2d at 555. And there is no evidence that the parties stipulated that Father would be awarded the guns in the decree of dissolution. The dissolution court did not abuse its discretion when it awarded all of the guns to Mother.

## Conclusion

The dissolution court concluded both that Father shall have supervised parenting time upon his release from incarceration and that Father shall have no parenting time. We remand and instruct the dissolution court to reconcile those inconsistent orders. And the dissolution court did not abuse its discretion when it ordered Father to pay $82 per week in child support while incarcerated and ordered that part of Father's share of the marital estate be set over to Mother to pay that obligation. Finally, the dissolution court

erred when it divided the marital estate.  Mother's share of the marital estate is $47,674, and Father's share is $18,888.

Affirmed in part, reversed in part, and remanded with instructions.

VAIDIK, C.J., and BROWN, J., concur.