David KEOWN, Appellant–Respondent,

v.

Cynthia Marie KEOWN,
Appellee–Petitioner.

No. 49A02–0706–CV–496.

Court of Appeals of Indiana.

April 4, 2008.

Elizabeth Gamboa, Franklin, IN, Attorney for Appellant.

Gary M. Selig, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

If a trial court orders a party to sell the marital residence, can it take into account the amount of necessary repairs and the costs of sale when valuing the property for the division of the marital estate? We hold that because a party was ordered to sell the marital residence, the trial court did not abuse its discretion by reducing the value of the property by the cost of necessary repairs and the costs of sale as long as those amounts are based on evidence in the record.

Appellant-respondent David Keown appeals the trial court's decree of dissolution of his marriage to appellee-petitioner Cynthia Keown. David argues that the trial court erred when it (1) reduced the value of the marital residence by the amount of repairs not yet made to the house and by the costs of sale; (2) included an interest in his mother's property that served as security for a loan that has since been paid back; (3) declined his request that Cynthia pay half of the marital debt; and (4) ordered Cynthia to pay him $2,529.16 to equalize the division of the marital estate

after the marital residence is sold. Finding no error, we affirm the judgment of the trial court.

## FACTS

David and Cynthia married on March 21, 1987, and separated on December 1, 2005. Cynthia filed a petition for dissolution of marriage on February 10, 2006. No children were born of the marriage and the only issue for the dissolution hearing was the division of marital debts and assets. A final hearing was held on February 23, 2007, and the trial court entered the following order on March 1, 2007:

6. Although the Court finds that the MFS Mutual fund and the USAA Mutual fund are part of the marital estate, the Court finds the source of these funds was an inheritance to [Cynthia] and they should be set aside to her.

7. Although the Court finds that the parties each have ¼ interest in real property located on Hoefgen Street in Indianapolis, the Court finds that the interest was acquired to assist [David's] mother and therefore sets aside the property interests to him.

8. [Cynthia] shall quitclaim her interest in the Hoefgen property.

9. The Court finds that the presumption of an equal division of the remaining property has not been rebutted in this case.

10. The Court finds that the remaining real and personal property of the parties shall be divided as set out in [Cynthia's] Exhibits 1, 2, and 3.

11. The Court finds that the former marital residence located at [XXXX], Indianapolis, IN [the marital residence] shall have a net value of $56,574.80 after deducting the mortgages; repairs necessary for sale detailed in [Cynthia's] Exhibit 4; and ten percent cost of sale.

12. The Court denies [Cynthia's] request to deduct the sum of $3,681.00 for repairs and maintenance already made on the property and the sum of $1250.00 for non-specific electrical work.

13. The Court denies [David's] request for reimbursement of one half of his expenses. . . .

14. The Court orders [Cynthia] to make the repairs outlined in Exhibit 4 and list the property for sale as soon as possible.

15. The Court orders [David] to quitclaim his interest in said property.

16. The Court orders [Cynthia] to quitclaim her interest in the real property located at [XXXX] Goodlet, Indianapolis, IN which is awarded to [David].

17. The Court orders [Cynthia] to pay [David] the sum of $2,529.16 from the proceeds of the sale of [the marital residence] to equalize the division.

18. The parties shall pay any debt incurred in their own name and hold each other harmless thereon.

19. The parties shall execute any documents necessary to transfer their interest in property awarded to the other and further cooperate transferring possession of any person[al] property items.

20. There is an irretrievable breakdown of the marriage and it shall be dissolved.

21. The parties shall pay their own fees and costs incurred in this action.

Appellant's App. p. 8–10. David now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

The trial court issued findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. Our standard of review thereon is well settled:

First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Carmichael v. Siegel,* 754 N.E.2d 619, 625 (Ind.Ct.App.2001) (citations omitted).

In a dissolution action, the trial court must divide marital property in a just and reasonable manner, including property owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation, or acquired by their joint efforts. Ind.Code § 31–15–7–4. The division of marital assets lies within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. *J.M. v. N.M.,* 844 N.E.2d 590, 599 (Ind.Ct.App. 2006), *trans. denied.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances presented. *Id.* When we review a challenge to the trial court's division of marital property, we may not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence most favorable to the trial court's disposition of marital property. *Daugherty v. Daugherty,* 816 N.E.2d 1180, 1187 (Ind.Ct.App.2004).

## II. Value of the Marital Residence

David does not dispute the appraised value of the marital residence—$169,000— or the net value after mortgages—$64,832. Appellant's Br. p. 11. However, David argues that the trial court abused its discretion by reducing the value of the marital residence by $6,285.20 for the costs of sale and by $1,972 for the cost of repairs that have not yet been made to the property.

### A. Costs of Sale

The trial court has broad discretion in ascertaining the value of property in a dissolution action and its valuation will not be disturbed without an abuse of that discretion. *Hiser v. Hiser,* 692 N.E.2d 925, 927 (Ind.Ct.App.1998). David argues that the trial court abused its discretion by reducing the net value of the marital residence by $6,285.20 for the costs of sale because that amount is "purely speculative" and "[w]hen the trial court's order is read as a whole, there is no requirement in the court's order [that] Cynthia sell the property." Appellant's Br. p. 11, 12.

In the dissolution decree, the trial court specifically ordered Cynthia to "make the repairs outlined in Exhibit 4 and list the property for sale as soon as possible." Appellant's App. p. 9. David attacks the trial court's order and argues that "[i]t is possible for Cynthia to comply with this order and still have no intention of selling the property. This could be achieved by, for example, listing the property for sale at an inflated price, or by listing the property for sale for a brief period of time." Appellant's Br. p. 12.

We disagree with David's overly literal reading of the trial court's order. Cynthia

testified at the hearing that it has "always been [her] intention to sell the house [and she is] actually going to do so." Tr. p. 13. In fact, Cynthia testified that the only reason the marital residence was not already listed for sale was that David "refuses to sign the listing agreement." *Id.* at 32. The trial court's intention to order Cynthia to sell the property is apparent from its language ordering her to "list the property *for sale*" and its order that shall make various repairs to the property to prepare it "*for sale.*" Appellant's App. p. 9 (emphases added).

In sum, it is clear from the trial court's order that it intended for Cynthia to make repairs to the marital residence and promptly list it for sale to sell it. We find David's reading of the trial court's order to be unreasonable. Moreover, we remind David that if Cynthia fails to sell the marital residence within a reasonable amount of time, he could file a petition with the trial court to hold her in contempt of court for willfully disobeying the dissolution decree. *Phillips v. Delks*, 880 N.E.2d 713, 717–18 (Ind.Ct.App.2008) (upholding a trial court's decision to hold a party in contempt of court for willfully disobeying a trial court's dissolution decree).

Turning to the costs of sale, David argues that the amount by which the trial court reduced the value of the marital residence—$6,285.20—is "purely speculative." Appellant's Br. p. 11. Although the property was not listed for sale at the time of the hearing, Cynthia testified that the costs of sale would be $16,900—10% of the property's appraised value—for the "broker's commission, closing costs, that kind of stuff." Tr. p. 13–14. David did not object to Cynthia's testimony and did not present his own evidence regarding the costs of sale. The trial court ultimately valued the costs of sale at $6,285.20—approximately 3.7% of the value of the mari-

tal residence—and reduced the property's value by that amount.

We have previously held that it "may be appropriate for a trial court to include the costs of sale that are a direct result of the disposition of property." *Dowden v. Allman*, 696 N.E.2d 456, 458 (Ind.Ct.App. 1998). In reaching that conclusion, we analogized the costs of sale to our previous analysis regarding the tax consequences of court-ordered dispositions. Specifically, in *Granger v. Granger* we held that a trial court may only consider the tax consequences of property distribution where "they necessarily [arise] from the plan of distribution." 579 N.E.2d 1319, 1320 (Ind. Ct.App.1991); *see also Qazi v. Qazi*, 546 N.E.2d 866, 871 (Ind.Ct.App.1989) (holding that "where a trial court's distribution does not require liquidation of pension or retirement plans, any potential tax consequences of early liquidation are speculative in nature and should not be considered in making a distribution"). The *Granger* court emphasized that "only the immediate tax consequences of the property disposition may be considered ... [and a] taxable event must occur as a direct result of the court-ordered disposition of the marital estate for the resulting tax to reduce the value of the marital estate." *Id.* at 1321.

Although we reversed the trial court in *Dowden* and remanded that cause with instructions to recalculate the value of the marital residence by excluding the estimated cost of sale, we noted that the costs in that case were "speculative in nature." 696 N.E.2d at 458. However, the trial court in *Dowden* had *not* ordered the respondent to sell the marital residence and the "only evidence" presented at the hearing was that, "due to his financial situation," the respondent "*may* have to sell the home." *Id.* at 457–58 (emphasis added). Thus, we concluded that it was improper for the trial court to include costs of sale in

the value of the marital residence because it had not ordered the respondent to sell the house and, thus, any costs associated with a sale were speculative. Put another way, in reaching our conclusion we focused on the speculative nature of the sale, not the speculative nature of the costs of sale.

The facts at issue herein are distinguishable from the facts of *Dowden*. As we have previously concluded, the trial court ordered Cynthia to sell the marital residence in the dissolution decree. Thus, there is no speculation regarding the impending sale because Cynthia has been ordered to sell the house. As for the amount, Cynthia testified at the hearing that the costs of sale would be $16,900. David did not object to this testimony or present contrary evidence regarding the costs of sale. Thus, the trial court's ultimate valuation of the costs of sale—$6,285.20—was well within the evidence presented at the hearing. In sum, because the trial court ordered Cynthia to sell the marital residence, it did not abuse its discretion by reducing the property's value by the costs of sale because those costs were a direct result of the disposition and were based on evidence presented at the hearing.

### B. Repairs

■ David argues that it was improper for the trial court to reduce the marital residence's net value by the cost of repairs not yet made to the property because "this debt has not been incurred before final separation [and] should not be considered in determining the value of the [marital residence]." Appellant's Br. p. 13. The rationale we used to resolve the previous issue can be applied to this issue as well. The trial court ordered Cynthia to make the repairs because they were "necessary for sale." Appellant's App. p. 9. Thus, the repair costs are a direct result of the trial court's order requiring Cynthia to sell

the residence. At the hearing, Cynthia admitted into evidence a detailed proposal from an industrial service contractor estimating the total cost of the repairs to be $1,972. Ex. 4. It was within the trial court's discretion to determine whether to reduce the marital property's value by this amount after determining that the repairs were necessary for sale. Therefore, we conclude that the trial court did not abuse its discretion by reducing the marital property's value by the cost of repairs that were necessary for the impending sale.

### III. Interest in the Hoefgen Property

■ While they were married, David and Cynthia each obtained a one-quarter interest in property purchased by David's mother (the Hoefgen property) as security for a loan the couple provided to her. David emphasizes that the loan has since been paid off and argues that he and Cynthia no longer have a "present interest of possessory value" in the Hoefgen property. Appellant's Br. p. 14. Thus, David argues that the trial court erred by distributing the Hoefgen property in the dissolution decree. *See Grathwohl v. Garrity*, 871 N.E.2d 297, 302 (Ind.Ct.App.2007) (holding that only assets in which a married couple has a present interest of possessory value should be included in the marital estate).

Both parties admit that David's mother repaid the loan. Tr. p. 23, 30, 34. However, both parties also admit that their names remain on the Hoefgen property's title because they have not addressed the "administrative matter" of clearing title. *Id.* at 30, 35. Notwithstanding the legal status of the property, we emphasize that the trial court's dissolution decree "*sets aside* the [Hoefgen] property interests to [David]" and orders Cynthia to "quitclaim her interest in the Hoefgen property." Appellant's App. p. 9 (emphasis added). Thus, we agree with Cynthia that even if

the Hoefgen property was erroneously distributed in the dissolution decree because the Keowns did not have a present possessory interest in it, any resulting error was harmless. Put another way, because the trial court set aside the parties' interest in the Hoefgen property to David, ordered Cynthia to quitclaim her interest, and did not include the value of the interest when evenly dividing the marital estate, David has not been prejudiced by the alleged error.

### IV. Marital Debt

■ The marital estate includes assets and liabilities. *Gard v. Gard*, 825 N.E.2d 907, 910 (Ind.Ct.App.2005). It closes on the date the dissolution petition is filed and debts incurred by one party after that date are not to be included in the marital estate. *Thompson v. Thompson*, 811 N.E.2d 888, 913 (Ind.Ct.App.2004).

David argues that the trial court erred by denying his request that Cynthia be ordered to pay half of the marital debt. David submitted evidence that he had paid debts for boat storage, dock rental, homeowner's insurance, filing fee eviction, boat insurance, and taxes totaling $4,153. Exs. C, D. However, Cynthia testified at trial that she also had paid some of the couple's debts. She testified that she had paid the water utilities, the car insurance, the mortgages on the real estate, and for various real estate repairs.[1] Tr. p. 46, 47, 50–53, 59. Additionally, David testified that he and Cynthia had "reach[ed] sort of an understanding on how [they] were going to handle debts and bills pending this litigation." *Id.* at 39. Thus, there is evidence in the record that each party was responsible for various debts during the pendency of the divorce. Based on this evidence, we

cannot conclude that the trial court abused its discretion by declining David's request for reimbursement.

### V. Payment to Equalize Division of Marital Estate

■ After dividing the marital estate, the trial court ordered Cynthia to pay David $2,529.16 from the proceeds of the sale of the marital residence "to equalize the division." Appellant's App. p. 10. David argues that this payment is conditioned on a future event—Cynthia selling the marital residence—therefore, the trial court erred by not making a final distribution of the marital estate.

The situation herein is distinguishable from the cases to which David directs our attention. *See Harris v. Harris*, 690 N.E.2d 742, 744 (Ind.Ct.App.1998) (holding that the trial court's decision to award the marital residence to wife with the condition that it revert to husband if wife is delinquent in paying the mortgage "is less than a final distribution of the marital assets because the parties' ultimate possession is contingent upon [wife's] ability to [make payments]"); *In re Marriage of McDonald*, 415 N.E.2d 75, 79 (Ind.Ct.App. 1981) (holding that the trial court erred by awarding husband $5,500 to be paid when wife sells the marital residence while leaving it to wife's discretion when, if ever, to sell the marital residence); *Henderson v. Henderson*, 401 N.E.2d 73, 74 (Ind.Ct.App. 1980) (holding that the trial court abused its discretion by awarding the marital residence to wife and ordering her to pay husband $5,500 if she sells it because she was not compelled to sell it). The wives in *Harris, Henderson,* and *McDonald* were under no obligation to liquidate the asset in question. Thus, we concluded that the

---

1. Cynthia testified that she had made repairs worth $3,681 to the marital residence after David moved out. Tr. p. 26–27. These repairs are distinct from the necessary repairs that the trial court found still needed to be made to prepare the marital residence for sale.

trial courts in those cases erred by not making a final disposition of the parties' marital estate and, instead, erroneously giving one of the parties control over when the estate would be settled.

Here, the trial court ordered Cynthia to sell the Keowns' marital residence and pay David a fixed amount—$2,529.16—from the proceeds of the sale. This situation is markedly different from the cases to which David directs our attention. While we acknowledge that it is impossible to project the exact date on which the marital residence will sell, Cynthia will sell it because she has been ordered to do so by the trial court. And David can petition the trial court to hold her in contempt of court if she willfully disobeys the order. Because the decisions to sell the marital residence and pay David a fixed amount are not within Cynthia's control, we conclude that the trial court did not abuse its discretion.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and ROBB, J., concur.