## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 22 2015, 6:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeffry G. Price
Peru, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cody Boruff, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Tiffany Boruff, <br> *Appellee-Respondent* | April 22, 2015 <br><br> Court of Appeals Case No. <br> 34A02-1412-DR-844 <br><br> Appeal from the Howard Circuit Court <br><br> The Honorable Lynn Murray, Judge <br><br> Cause No. 34C01-1308-DR-644 |

**Najam, Judge.**

## Statement of the Case

[1] Cody Boruff ("Father") appeals the dissolution court's decree of dissolution of his marriage to Tiffany Boruff ("Mother"). Father presents four issues for our review:

1. Whether the trial court abused its discretion when it denied his motion to continue the final hearing.

2. Whether the trial court abused its discretion when it calculated his child support obligation.

3. Whether the trial court abused its discretion when it divided the marital estate.

4. Whether the trial court abused its discretion when it ordered him to pay some of Wife's attorney's fees.

We affirm.

## Facts and Procedural History

[2] Father and Mother were married in May 2012, and one child, K.B., was born of the marriage in July 2012. On August 6, 2013, Father filed a petition for dissolution of the marriage, and on August 23, Mother filed a "counter-petition" for dissolution. Appellant's App. at 11. On September 5, the parties, by their respective attorneys, filed an agreed provisional order with the trial court, and the trial court approved that order. Pursuant to the provisional order, Mother had custody of K.B., and Father exercised parenting time and was obligated to pay child support in the amount of $77 per week. But Father did not comply with the child support order.

[3] In December 2013, Father's attorney withdrew his representation of Father. And on February 18, 2014, on Mother's motion, the trial court issued an income withholding order for child support to Wendy's restaurant, Father's employer. Also on that date, Mother requested a final hearing on the

dissolution petition, as well as a hearing on Mother's affidavit for citation alleging that Father was in contempt of court for failure to pay child support.[1] The trial court set a hearing on both matters for March 27 ("the hearing"), and it ordered Father "to complete the UpToParents.org program and file [the] completion certificate with the Court prior to the hearing." *Id.* at 4. The trial court had originally ordered the parties to complete that program in August 2013, and Mother had filed her completion certificate with the trial court on August 26, 2013.

[4] On March 24, 2014, three days before the hearing, Father filed a motion to continue the hearing in order to obtain new counsel. The trial court granted that motion and rescheduled the hearing for May 8, 2014. On May 7, a new attorney filed her appearance with the trial court on Father's behalf and requested another continuance. The trial court granted that continuance and rescheduled the hearing for August 7. The trial court also ordered the parties to "submit all matters to mediation prior to the hearing[.]" *Id.* at 5.

[5] The parties were unable to attend the scheduled mediation because Father's attorney was ill. Accordingly, on August 6, Father moved to continue the hearing scheduled for August 7. The trial court granted that motion but stated

---

[1] Father has not included a copy of that affidavit in the appendix on appeal. In fact, Father's appendix is woefully deficient in that it includes only a copy of the Chronological Case Summary and the Decree of Dissolution. We remind Father's counsel to abide by Appellate Rule 50(A)(2) in the future.

that "[n]o further continuances will be granted." *Id.* at 6. The trial court scheduled the hearing for October 8.

[6] On August 18, Father's attorney filed a motion to withdraw, which the trial court granted. On September 17, the parties advised the trial court that mediation had "failed to result in a settlement." *Id.* at 7. On October 6, two days before the scheduled hearing, Father filed a motion to continue, and Mother objected. The trial court denied that motion.

[7] At the October 8 hearing on the dissolution decree and on Mother's affidavit for citation, Mother was represented by counsel, but Father was *pro se*. At the conclusion of the hearing, the trial court asked the parties to submit child support worksheets and proposed orders. Father did not submit either a child support worksheet or a proposed order to the trial court. And on November 3, the trial court entered the final decree with the following relevant findings and conclusions:

> 11. Petitioner shall complete the [UpToParents.org] workshop within seven (7) days of the date of this Decree and submit proof thereof to the Court[] or risk further proceedings for contempt of the Court's Order.
>
> Child Custody—Physical
>
> * * *
>
> 13. The parties agreed as a part of their provisional orders to [Mother]'s primary physical custody of the minor child, and the same has been maintained since that time.

14. [Mother] requests that the same arrangement continue following the dissolution of the parties' marriage, and [Father] does not object thereto.

15. Finding from the totality of the evidence presented that such an arrangement is in the best interests of the minor child, the Court places physical custody of the minor child [K.B.] with [Mother].

Child Support

16. Because the Court places the physical custody of [K.B.] with [Mother], the establishment of post-Decree child support is also appropriate.

17. [Father] was employed as a manager during the course of the dissolution proceedings, first at a local Wendy's Restaurant, and later at a Taco Bell restaurant in Grant County. [Father] testified that he was unemployed from sometime in June[] 2014, to sometime in August, 2014[] although his Facebook page (Exhibit "F") indicates that he obtained the Taco Bell job sometime in June[] 2014.

18. Despite having such employments [sic], [Father] testified that he voluntarily left both, and at the time of the final hearing had no current income source.[Footnote: [Father] testified that he "just obtained a job" at Kohl's, in an undetermined position, for an undetermined wage, for an undetermined duration[,] and on an undetermined work schedule. The Court does not find such representation, as made, to be credible.]

19. [Father] has sued his first employer and claims he was directed by his lawyer to quit his second employment in order to join the second employer as another Defendant in [Father]'s suit against the first.

20.     In any event, it is clear that [Father] did not lose his employment(s) [sic] through no fault of his own, but rather, by virtue of his own volition.  As such, attributing income at his previous income level is appropriate under the circumstances.

21.     [Mother]'s Exhibit "E," a check for [Father's] regular two (2) week payroll, established [Father]'s gross weekly wage in 2013 near the time of the filing to be approximately $530.00.

22.     [Father] testified that his "take-home" wage was "a couple of hundred dollars higher than that evidenced by the Exhibit when he left Wendy's and[,] when he left Taco Bell[,] was "a little more" than his ending wage at Wendy's.

23.     However, despite having received discovery, multiple requests for compliance, an Order Compelling Compliance, and finally a Sanctions Order from the Court, [Father] failed to provide any proof as to the actual extent of his previous wages. [Father]'s refusal to comply with the rules governing discovery and the Court's prior Order(s) do not form a basis for [Father]'s relief from the Court's valuation of his gross income in the absence of evidence to the contrary.

24.     Based upon the foregoing, the Court finds the [Father]'s gross weekly wage should be attributed at $650.00 per week.

25.     [Mother] is employed by AT&T, earns an hourly wage of $12.40, with a guaranteed forty (40) hour work week.  As long as she makes her goals—which she had since starting with AT&T, she is further guaranteed a monthly commission of thirteen hundred dollars ($1,300.00).

26.     Based upon the foregoing, the Court finds [Mother]'s gross weekly wage to be $800.00 per week.

27.   [Mother] provides [K.B.] with employer-sponsored health insurance for which she pays one hundred forty-four dollars ($144.00) monthly.

28.   [Mother] pays her mother, with whom she lives, five hundred dollars ($500.00) monthly in order to watch [K.B.] while [Mother] works.

29.   As further elaborated upon hereinafter, [Father] should be afforded credit for parenting time pursuant to the Indiana Parenting Time Guidelines (hereinafter "the Guidelines") and credited with ninety-eight (98) overnight visitations.

30.   Based upon all of the foregoing parameters and the attached Child Support Obligation Worksheet, [Father] shall pay to [Mother] for the support of said minor child the weekly sum of $121.00.

* * *

Property Distribution

45.   [Father] and [Mother] have heretofore divided certain assets of the parties.

46.   Unless otherwise modified hereafter, [Father] and [Mother] shall each have as their separate personal property all furniture, household goods, personal clothing, jewelry and effects now [in] their respective possessions.

47.   Unless modified hereafter, each party shall further have as his/her separate personal property all insurance policies and accounts with financial institutions, which accounts exist in their individual names alone.

* * *

Motor Vehicles

50.     During the marriage, [Father]'s vehicle was repossessed for non-payment.

51.     At the time of separation, [Father] took the '99 Pontiac Grand Prix which [Mother] brought into the marriage as a graduation gift from her parent.  That automobile is now described as "broken."  [Father], who values the vehicle at between $700.00 and $1,500.00, desires to retain the vehicle and [Mother], reluctantly, does not want the vehicle back.  [Father] shall retain [the] '99 Pontiac Grand Prix and its value, and is responsible for any debt associated therewith.  [Father] shall not utilize that vehicle to transport the minor child for parenting time unless and until it is adequately repaired.

Furniture, Appliances and Household Goods

52.     Other than as already divided, or further specifically set over in this Decree, [Father] shall have as his separate property those items currently in his possession, as well as any boxes of [Father]'s personal effects in the basement of [Mother]'s parents' home.

53.     Other than as already divided, or further specifically set over in this Decree [Mother] shall have as her separate property those items currently in her possession, as well as the following specific item(s) of personalty currently in [Mother]'s possession:

55" LED TV, Xbox, Xbox Kinect, Xbox controllers, Blue Ray 3D DVD Player, and all associated accessories for each of those items, as well as Grandpa's hand-made shelf[.]

[Father] testified that these items were "well maintained" and the same should be provided to [Mother] undiminished in condition.

Debts

54.    The parties have substantial debt[s] which existed at the time of the filing, some of which are currently the subject of litigation and all of which are summarized as follows (amounts are approximations):

Portfolio Recovery Associates v. Tiffany Boruff For GE Capital Retail Bank/HH Gregg (Cause No. 34C01-1404-CC-309) $1,430.00

Law Office of David Sean Dufek/Tiffany Boruff For GE Money Retail Bank/HH Gregg  $1,625.00

Credit Collection Services/Cody & Tiffany Boruff For Allstate Property & Casualty  $115.00

Autumn Trace Apartments/Cody & Tiffany Boruff  $1,500.00 First National Collection Bureau/Cody Boruff For First Premier Bank  $415.00

Bull City Financial Solutions/Cody Boruff For Duke Energy $225.00

Xfinity/Tiffany Boruff  $145.00

Allied Interstate/Tiffany Boruff For PNC Bank  $720.00

55.    The two (2) GE obligations arise from the parties['] purchase of the previously-distributed electronics.  [Mother] requested the possession of those items and agreed that she should be responsible for the obligations associated therewith. Having awarded [Mother] the requested property, the Court agrees that this is equitable.

56.    The Allied Interstate debt arose from [Father]'s execution of a check on [Mother]'s account, when the account contained

insufficient funds. In describing how he came to execute the check, [Father] testified that [Mother] left her checkbook out and that [Father] "would pay all of the bills." In reviewing the parties' outstanding debts, the Court does not find such representation, as made, to be credible.

57. [Father] acknowledged that he made no payment(s) with respect to any of the foregoing debt(s) during the pendency of the dissolution.

58. Accordingly, [Father] shall assume and pay the following debts of the parties: Allstate Property & Casualty, Autumn Trace Apartments, First Premier Bank, Duke Energy, Xfinity and PNC Bank.

59. [Mother] shall assume and pay the following debts of the parties: GE Capital Retail Bank and GE Money Retail Bank.

Equal Distribution

60. The Court, having considered the contribution of each spouse to the acquisition of the property, the extent to which the property was acquired by each spouse prior to the marriage, the economic circumstances of each spouse at the time the disposition of the property is to become effective, the conduct of the parties during the marriage as related to the disposition or dissipation of their property, and the earnings or earning ability of the parties as related to the final division of property[,] and final determination of the property rights of the parties, concludes that an equal division of the marital property between the parties is just and reasonable, and finds the same as set forth herein to be an equal distribution of the marital estate.

* * *

Affidavit [for] Citation

62.     The Court provisionally ordered [Father], based upon his agreement, to pay the sum of seventy-seven dollars ($77.00) per week in provisional child support.

63.     The Court finds the delinquency calculation provided by [Mother]'s counsel, a copy of which is attached hereto and incorporated herein by reference, to be a correct determination of [Father]'s arrearage:  to the date of the final hearing [Father] had paid six hundred sixty-two dollars ($662.00) of the four thousand three hundred eighty-nine dollars ($4,389.00) owed—an amount less than twenty percent (20%).

64.     [Father] admitted that he was substantially delinquent and that he had been gainfully employed during the majority of the pendency, but stated that he could not pay the child support because he had "many other debts to pay."  As noted by the Court previously, [Father] was not paying any of the parties' joint debts.  [Father] further admitted that since the separation he has been residing in his mother's home, where [he] is provided with shelter, maintenance and a vehicle—all at no cost to him.

65.     The Court finds that [Father] did intentionally and willfully refuse to pay court-ordered child support when he had the ability to do so.  The Court finds [Father] in indirect contempt of court as a consequence.

66.     The Court further finds that [Father] should be sentenced to ninety (90) days in jail without good time credit as a sanction for his indirect contempt.  That sentence is suspended, but shall be imposed if [Father] fails to purge himself of his contempt as set forth hereinafter.

67.     In order to purge himself, [Father] shall do all of the following:

a.     Within no more than seven (7) days of the Court's entry of this Decree, pay to the Clerk of the Howard County Courts (Child Support Division) the sum of one thousand dollars ($1,000.00);

b.     Pay the weekly child support amount established by this Decree ($121.00) each and every week without fail;

c.     Pay an additional weekly amount towards the reduction of [Father]'s arrearage in the sum of twenty-five dollars ($25.00) each and every week without fail;

d.     Within no more than seven (7) days of the Court's entry of this Decree, complete his portion of the preparation of the 2012 state and federal income tax refund request as set forth below; and

e.     Pay the attorney fees as ordered below.

* * *

Attorney Fees

75.     Provisional attorney fees were reserved by the parties in the Agreed Provisional Orders.

76.     The Court's findings above support an award of attorney fees against [Father], both with respect to the divorce-related issues generally, as well as with respect to the Citation-related issues.

77.     [Father] shall pay a portion of [Mother]'s final attorney fees in the amount of four thousand dollars ($4,000.00) as follows:  $250.00 per month, commencing on the first day of November, and following the first day of every month thereafter until paid.  Interest shall not accrue on the unpaid balance, nor shall it be treated as a judgment, except in default.  [Father] is

reminded that the payment of attorney fees as set forth herein is also a continuing basis for the purging of [Father]'s indirect contempt of Court.

Appellant's App. at 12-24. This appeal ensued.[2]

# Discussion and Decision

## *Standard of Review*

[8] The trial court here entered findings and conclusions to accompany its dissolution decree. However, it does not appear that either party requested such findings in accordance with Indiana Trial Rule 52(A). "In such a situation, the specific factual findings control only the issues that they cover, while a general judgment standard applies to issues upon which there are no findings." *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013). Not every finding needs to be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record. *Id.* "We may affirm a general judgment with sua sponte findings upon any legal theory supported by the evidence introduced at trial." *Id.* Sua sponte findings control as to the issues upon which the court has found, but do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to

---

[2] On November 10, 2014, Father filed with the trial court a certificate of completion of the UpToParents.org program.

the evidence of record to determine if the result is against the facts and circumstances before the court. *Id.*

[9] When reviewing the accuracy of findings entered sua sponte, we first consider whether the evidence supports them. *Id.* Next, we consider whether the findings support the judgment. *Id.* We will disregard a finding only if it is clearly erroneous, meaning the record contains no facts to support it either directly or by inference. *Id.* We will not reweigh the evidence or judge witness credibility. *Id.* at 999. "A judgment also is clearly erroneous if it relies on an incorrect legal standard, and we do not defer to a trial court's legal conclusions." *Id.* at 998-99.

[10] We note that Mother has not filed an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing the appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes prima facie error. *Zoller v. Zoller*, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Wright v. Wright*, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002).

### Issue One: Motion to Continue

[11] Father first contends that the trial court abused its discretion when it denied his motion to continue the hearing on the dissolution petition and on Mother's affidavit for citation. Under the trial rules, a trial court shall grant a

continuance upon motion and "a showing of good cause established by affidavit or other evidence." Ind. Trial Rule 53.5; *Gunashekar v. Grose*, 915 N.E.2d 953, 955 (Ind. 2009). A trial court's decision to grant or deny a motion to continue a trial date is reviewed for an abuse of discretion, and there is a strong presumption the trial court properly exercised its discretion. *Gunashekar*, 915 N.E.2d at 955. A denial of a motion for continuance is an abuse of discretion only if the movant demonstrates good cause for granting it. *Id.*

[12]  Father contends that, "[w]ithout legal counsel, [he] was unprepared and ill[-] equipped to represent himself at the contested final hearing." Appellant's Br. at 8. Thus, he maintains that the trial court abused its discretion when it denied his motion to continue. We cannot agree.

[13]  First, Father does not direct us to anything in the record showing that he supported his motion to continue with an affidavit or other evidence, as required by Trial Rule 53.5. Second, Father had more than six weeks from the time his attorney withdrew her appearance until the final hearing to obtain new counsel, but he did not do so. And Father does not describe what efforts he made, if any, to obtain new counsel during that time. The trial court did not abuse its discretion when it denied Father's motion to continue the hearing. *See, e.g.*, *Gunshekar*, 915 N.E.2d at 955 (holding trial court did not abuse its discretion in denying motion to continue trial where pro se defendants "said nothing to the trial judge to indicate whether they were diligent in trying to engage new counsel or whether they did nothing at all during the eight weeks after [their] attorney . . . withdrew").

## Issue Two: Child Support

[14] Father next contends that the trial court abused its discretion when it calculated his child support obligation. A trial court's calculation of child support is presumptively valid. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). We will reverse a trial court's decision in child support matters only if it is clearly erroneous or contrary to law. *Id.* Again, a decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court. *Id.*

[15] Father maintains that, in calculating his child support obligation, the trial court relied on a pay stub that "does not reflect [Father]'s current gross weekly income" and "there was no evidence at the final hearing as to what his pay from [his current job at] Kohl's would be." Appellant's Br. at 9. And, citing Indiana Child Support Guideline 3(B)(2),[3] Father asserts that "[t]he child support guidelines demand that verification of the income of both parties be provided." Appellant's Br. at 9. But Father ignores the fact that he did not comply with discovery orders regarding proof of his income, and, more importantly, he did not submit a child support worksheet to the trial court.

[16] "Waiver is an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it."

---

[3] Child Support Guideline 3(B)(2) provides in relevant part that parents should document both their current and past income with paystubs or employer statements.

*Hamlin v. Sourwine*, 666 N.E.2d 404, 409 (Ind. Ct. App. 1996). Here, at the conclusion of the final hearing, the trial court asked the parties to submit child support worksheets pursuant to Child Support Guideline 3(B)(1). But, while Mother submitted a worksheet, Father did not. And, while Father testified at the final hearing regarding his prior income, he presented no evidence regarding his current income. We hold that Father has waived this issue for our review. *See Butterfield v. Constantine*, 864 N.E.2d 414, 417 (Ind. Ct. App. 2007) (holding father waived challenge to child support order where he did not submit a child support worksheet to the trial court).

[17] Waiver notwithstanding, the trial court based its child support order on the evidence presented at the final hearing and Mother's child support worksheet. The Indiana Child Support Guidelines provide that if a parent is voluntarily unemployed or underemployed, child support shall be determined based on potential income. Ind. Child Support Guideline 3(A)(3). "A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earning levels in the community." *Id.* The purposes behind determining potential income are to "discourage a parent from taking a lower paying job to avoid the payment of significant support" and to "fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed." Child Supp. G. 3 cmt. 2(c). A trial court has wide discretion with regard to imputing income to ensure the child support obligor does not

evade his or her support obligation. *Apter v. Ross*, 781 N.E.2d 744, 761 (Ind. Ct. App. 2003), *trans. denied*.

[18]    Here, Father testified that he voluntarily left his employment at Wendy's, where he was earning approximately $596 per week[4] at the time he quit, and Taco Bell, where he was earning "a couple hundred dollars more" per paycheck than he was earning at Wendy's. Tr. at 80. Father testified further that he had just obtained employment at Kohl's, but he did not know what his pay or hours would be. The trial court imputed Father's weekly income at $650, and Father has not shown that the court abused its considerable discretion in that regard. *See Apter*, 781 N.E.2d at 761. We cannot say that the trial court abused its discretion when it ordered Father to pay $121 weekly in child support.

### Issue Three: Marital Estate

[19]    Father next contends that the trial court abused its discretion when it divided the marital estate. In particular, Father maintains that he cannot afford to pay the debts assigned to him in the dissolution decree. The division of marital assets and liabilities lies within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. *Keown v. Keown*, 883 N.E.2d 865, 868 (Ind. Ct. App. 2008). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and

---

[4] Mother submitted one of Father's Wendy's paystubs showing that his weekly gross pay was $528.50, but he testified that, at the time he left that job, he was earning $1192 biweekly. Tr. at 46.

circumstances presented. *Id.* When we review a challenge to the trial court's division of marital property, we may not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence most favorable to the trial court's disposition of marital property. *Id.*

[20] Here, the trial court divided the marital estate between the parties equally. Father does not contend that the trial court erred when it calculated the parties' assets and liabilities or that the court deviated from the presumptive equal division of the marital estate. Father's sole contention is that the trial court abused its discretion "by requiring [him] to make payments, for which he does not have adequate income and does not have any other resource with which to comply with the court's order." Appellant's Br. at 13. In essence, then, Father contends that the trial court should have awarded him more than fifty percent of the marital estate.

[21] The trial court's discretion in the disposition of marital property is subject to the statutory presumption for equal distribution. *Doyle v. Doyle*, 756 N.E.2d 576, 578 (Ind. Ct. App. 2001). The presumption that an equal division of marital property would be just and reasonable may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

> (A) before the marriage; or

> (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

> (A) a final division of property; and

> (B) a final determination of the property rights of the parties.

*Id.* (quoting Ind. Code § 31-15-7-5). The statutory presumption must be followed absent evidence that an equal division would not be just and reasonable. *Id.* The party challenging the trial court's property division must overcome a strong presumption that the trial court complied with the statute and considered evidence of the statutory factors. *Id.* We note that, while the statute provides that marital property shall be divided "in a just and reasonable manner," the term "just" invokes a concept of fairness and of not doing wrong to either party; however, "just and reasonable" does not necessarily mean equal

or relatively equal. *Id.* (quoting *Swinney v. Swinney*, 419 N.E.2d 996, 998 (Ind. Ct. App. 1981), *trans. denied*).

[22] Here, Father's sole contention on appeal is, in effect, that the trial court did not properly consider the parties' economic circumstances at the time of the final hearing. But, again, Father did not comply with discovery or otherwise present evidence regarding his income at the time of the final hearing, and the undisputed evidence showed that he lived with his mother rent-free. Father's bald assertion that he cannot afford to pay the debts assigned to him, without more, fails to demonstrate that the division of property, including the debts of the marriage, is unjust or unreasonable. The trial court did not abuse its discretion when it divided the marital estate.

### Issue Four: Attorney's Fees

[23] Finally, Father contends that the trial court abused its discretion when it ordered him to pay $4,000 of Wife's attorney's fees. In particular, Father maintains that the trial court did not take into account the parties' relative economic resources. But, without regard to economic resources, once a party is found in contempt,[5] the trial court has "the inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions." *Adler v. Adler*, 713 N.E.2d 348, 355 (Ind. Ct. App. 1999) (quoting *Crowl v. Berryhill*, 678 N.E.2d 828, 832 (Ind. Ct. App. 1997)).

---

[5] The trial court ordered the attorney's fees as part of the contempt finding.

Such inherent authority includes the award of attorney's fees that were expended by a party in order to enforce a child support order and judgment. *See Topolski v. Topolski*, 742 N.E.2d 991, 996 (Ind. Ct. App. 2001). Here, because Father was in contempt for failure to pay child support, the trial court did not abuse its discretion when it awarded Mother $4,000 in attorney's fees.

[24] In sum, Father has not established prima facie error, and the trial court did not abuse its discretion with respect to the dissolution decree.

[25] Affirmed.

Baker, J., and Friedlander, J., concur.