# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 12 2019, 9:45 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Laurie Baiden Bumb
Bumb Law Office, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Matthew J. McGovern
Anderson, Indiana

Michelle A. Cox
Evansville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard W. Campbell, <br> *Appellant-Respondent/Cross-Appellee,* <br><br> v. <br><br> Barbara W. Campbell, <br> *Appellee-Petitioner/Cross-Appellant* | December 12, 2019 <br><br> Court of Appeals Case No. 18A-DN-2501 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Sheila M. Corcoran, Judge <br><br> Trial Court Cause No. 82D01-1701-DN-33 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Richard W. Campell ("Husband") appeals the trial court's division of property in Husband's divorce from Barbara W. Campbell ("Wife"). Wife cross-appeals. We affirm the trial court in all respects.

# Facts and Procedural History

[2] The following facts are taken from unchallenged findings by the trial court. Husband (who is 66) and Wife (who is 70) married in 1989. It was the second marriage for each, and they did not have any children together. Wife brought approximately $75,000 in assets into the marriage, and Husband brought a small amount of debt. Wife, who has a two-year degree in computer programming, invested in Husband's education early in the marriage, and Husband became a certified public accountant at Wife's urging after failing the exam multiple times. In 1993, Husband and Wife used $30,000 of Wife's premarital assets as collateral for a loan to start an accounting business, Richard Campbell CPA. In 2011, Richard Campbell CPA merged with other accountants to form Myriad CPA, LLC. During the marriage, Wife performed a variety of work for both accounting businesses, including bookkeeping, office administration, cleaning and maintenance, and client work. At various times, she also worked two unrelated jobs to support the marriage. The parties agree that Wife was underpaid while she worked at Myriad. She retired in 2014.

In 2015, Myriad's business began to decline, and Husband started to "spend excessive amounts of money from his personal funds on food and alcohol that he consumed during the work week while he was the managing partner of Myriad." Appellant's App. Vol. II p. 19. In March 2016, Husband "became romantically involved with a co-worker" and subsequently "spent a significant amount of time and money during work hours eating out, consuming alcohol, and frequenting motels in furtherance of this relationship with her." *Id.* "By Husband's own account, he was sharing elaborate lunches, drinking alcohol, and going to motels during work hours a total of 106 days during a nine-month period in 2016." *Id.* at 20. In total, Husband "misused or wasted close to $50,000." *Id.* at 30. In addition to that spending, personal financial statements created by Husband indicate that the value of his interest in Myriad decreased by at least $300,000 in 2016.

In late 2016, Wife was diagnosed with an incurable liver disease that can lead to liver failure, a liver transplant, or death. Because of her illness, Wife cannot support herself through employment, and she receives about $1,000 in social security each month.

Husband and Wife separated on December 24, 2016, and Wife filed for divorce two weeks later, on January 6, 2017. While the case was pending, Husband further dissipated marital assets. In July 2017, he "began to draw from his capital account in lieu of receiving a Myriad paycheck resulting, in part, in a lower capital account value on 12/31/17 than on 12/31/16." *Id.* at 21. Then, on January 1, 2018, Myriad merged with a larger accounting firm, Alexander

Thompson Arnold (ATA), and Husband rolled a $164,080 note receivable from his Myriad partners—a marital asset—into his ATA capital account so that he would no longer receive payments on the note. Husband also gave ATA the option to purchase the building that Myriad had under lease—a building co-owned by Wife—thereby foreclosing the possibility of selling the building to another prospective buyer on the open market for a higher price. In addition, Husband agreed to sell a condo—also co-owned by Wife—to his son under an installment contract that would bring half as much per month ($304) than renting the condo to someone else ($600 to $650).

[6] The trial court held the final hearing in January and March of 2018 and issued its Findings of Fact and Conclusions of Law and Final Decree of Dissolution of Marriage in June 2018. The court concluded that "it is reasonable to value the marital property as close to the filing date as possible, with the exception of certain bank accounts that were used by the parties during the provisional period," so that there would be "no need to compensate Wife separately for the post-filing dissipation by Husband." *Id.* at 28, 31. The trial court determined that an unequal division of the marital estate in favor of Wife is appropriate, specifically, 60% to Wife and 40% to Husband. To accomplish this split, the court assigned specific assets to the parties and then ordered Husband to pay Wife "cash equalization payments that total $531,155.77[.]" *Id.* at 36.

[7] In addition to the property division, the trial court ruled on several other matters. On Wife's motion for sanctions under Trial Rule 37, the court found that "Husband engaged in a pattern of non-compliance in the discovery process

throughout this case, and attempted to conceal information from Wife to further his interests in this litigation, causing Wife to incur unnecessary expense and causing the Court to intervene on three (3) separate occasions." *Id.* at 37. Due to this conduct, the complexity of the case, and the "circumstances of both parties," the court ordered Husband to pay Wife $30,000 for attorney's fees and $5,000 for litigation expenses. *Id.* at 39. Finally, the court found Husband in contempt for multiple violations of a March 2017 provisional order.

[8] Husband now appeals, and Wife cross-appeals.

# Discussion and Decision

[9] Husband challenges several aspects of the trial court's property division. Wife cross-appeals, arguing that the trial court should have ordered Husband to provide security for the equalization payment.[1]

# I. Husband's Appeal

[10] Husband contends that the trial court committed multiple errors in its division of the marital property. The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014).

---

[1] In addition to her cross-appeal, Wife asserts that Husband "should be estopped from appealing the trial court's decision" because he has taken actions pursuant to it, such as transferring certain property. Appellee/Cross-Appellant's Br. p. 19 (citing *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1329 (Ind. Ct. App. 1991), *reh'g denied*, *trans. denied*). Because we reject all of Husband's appellate claims, we need not reach this issue.

# A. Kevin Schwartz note

[11] Husband first argues that he is "personally liable" for a share of a debt owed to Kevin Schwartz, a former Myriad partner, and that the trial court failed to include this liability in its calculation and division of the marital pot. Appellant's Br. pp. 20-23. After Schwartz retired at the end of 2015, Myriad executed a promissory note promising to pay him $725,000 for his interest in the company—60 monthly payments of $12,083.33 each. According to Husband, he and the other remaining Myriad partners were personally obligated to make these payments, so "Myriad made the payments each month and each partner's share of the payments to Kevin Schwartz was deducted from his capital account." *Id.* at 21. By the end of 2016 (a week before Wife filed for divorce), the total debt remaining was about $580,000. Husband says that his "share of the balance due on this note on that date was in the amount of $192,966" and that the trial court "made no reference to this outstanding obligation in its Findings of Fact and Conclusions of Law." *Id.* at 21-22.

[12] Husband is incorrect. The trial court referenced the Kevin Schwartz note in its factual findings about the value of Husband's interest in Myriad. The court found:

> 46. Husband provided different calculations of the value of his interest in Myriad by adjusting the value of his capital account using different methods and different financial figures that were only preliminary and not final figures. As of the last day of trial, Myriad had not finalized its company books for 2017.

47. Husband's calculations of value at trial lacked consistency, and reduced the value of his capital account **by what he testified to was his portion of a note payable to a former Myriad partner** that was not reflected on the company books, or personally guaranteed by the partners.

48. The evidence demonstrated Husband was an active participant in the management of Myriad and able to influence the value of his capital account in 2017 after his wife filed for dissolution of their marriage.

Appellant's App. Vol. II p. 21 (emphasis added). In light of Finding 47, which Husband fails to acknowledge in his briefs, we are confident that the trial court factored the Kevin Schwartz note into its valuation of Husband's interest in Myriad at $800,873—a valuation that Husband does not challenge on appeal.[2] The trial court's handling of the Kevin Schwartz note was not an abuse of discretion.

---

[2] Perhaps the reason Husband doesn't challenge the trial court's valuation of Myriad is that it is at the low end of a range provided by Husband himself. As Wife notes:

> In September 2017, Husband prepared a personal financial statement for a bank showing that the value of his interest in Myriad as of 12/31/16 was $1,000,000. At the time of his deposition, the Husband showed the value of his Myriad interest as of 12/31/16 was $866,865. In a different balance sheet, as of December 31, 2016, the Husband's interest in Myriad was valued at $800,872.98.

Appellee/Cross-Appellant's Br. p. 25 (citations omitted). Wife argues that the trial court's valuation of $800,873 "was clearly within the range indicated by the evidence," *id.* at 26, which Husband doesn't dispute.

# B. Provisional orders

[13] Next, Husband contends that the trial court's division of the marital estate failed to fully account for various provisional orders that were entered while the case was pending.

[14] In a March 2017 provisional order, the trial court authorized the payment of $15,500 to each of the parties' attorneys/experts from a United Fidelity Bank account. According to Husband, that account had a balance of $104,646 as of the date of filing, various expenditures reduced the balance before the provisional order, and the two $15,500 distributions brought the balance down to $62,324. In its final order, however, the trial court divided the full date-of-filing balance, awarding $62,324 to Wife and $42,322 to Husband. Husband argues:

> This award to the Husband completely disregards the expenditures made from this account prior to the entry of the March 20, 2017 Mediated Agreed Provisional Order as well as the payment of a total of $31,000 in attorney fees pursuant to that Order. After the distribution to the Wife of $62,324 from the United Fidelity account, there was only a minimal balance remaining in that account. The $42,322 awarded to the Husband from that account simply did not exist and should not have been factored into the trial court's division of marital assets.

Appellant's Br. p. 25.

[15] It is true that the $42,322 "awarded" to Husband did not actually exist by the time of the final decree. However, as Husband himself acknowledges, the trial

court used date-of-filing values for certain assets so "there is no need to compensate Wife separately for the post-filing dissipation by Husband." Appellant's App. Vol. II p. 31. Husband does not dispute the trial court's finding that he dissipated assets after Wife filed for divorce, nor does he dispute the trial court's authority to use date-of-filing values as a way of addressing post-filing dissipation. As such, we cannot say that the trial court abused its discretion by awarding Husband $42,322 from the United Fidelity account.

[16] Also in the March 2017 order, the trial court directed that the $4,292.20 monthly payments Husband was receiving under a $164,080 promissory note from Myriad be divided equally between the parties ($2,146.10 each) during the pendency of the case. Husband made those payments to Wife for nine months (March-December 2017)—a total of $19,314.90—and the trial court factored those payments into its eventual division of the note, awarding Husband $144,765.10 of the $164,080 and awarding Wife the other $19,314.90. However, Husband didn't make the payments to Wife for the last six months before the final decree (January-June 2018). As a result, the trial court found Husband in contempt and ordered him to make up those six payments—a total of $12,876.60. On appeal, Husband doesn't dispute that he failed to make the payments, the trial court's contempt finding, or the order to make up the missed payments. Instead, he asserts that the trial court should have included the $12,876.60 in Wife's share of the marital estate and deducted the same amount from his share, just as it did with the nine payments that Husband actually made. But Husband doesn't cite any authority for the proposition that the trial

court was required to factor **any** of the provisional payments into the final division of assets, let alone **all** of them. To the contrary, we have held that "whether to give credit for temporary support and maintenance in the final division of the property lies within the sound discretion of the trial court." *Rodgers v. Rodgers*, 503 N.E.2d 1255, 1258 (Ind. Ct. App. 1987), *reh'g denied*, *trans. denied*. Husband has failed to convince us that the trial court abused that discretion in this case.

[17] In an October 2017 order, the trial court granted a motion to compel discovery filed by Wife and ordered Husband to transfer $20,000 to Wife "for litigation expenses." Appellant's Appendix. P. 127. The court added, "Said sum shall be included in the marital estate at the Final Hearing." *Id.* Seizing on the latter language, Husband asserts that $20,000 "should have been credited to the Wife in the final distribution of the marital estate[.]" Appellant's Br. p. 26. As Wife notes, however, "[t]he terms of a provisional order may be revoked or modified before the final decree on a showing of the facts appropriate to revocation or modification." Ind. Code § 31-15-4-15. Wife contends that the trial court's change of course with regard to this $20,000 was justified by Husband's dissipation of assets, his lack of cooperation during discovery, and his contempt of court. In his reply brief, Husband offers no response. We find no abuse of discretion on this issue.

[18] At the end of the final hearing on March 7, 2018, the parties agreed that each would take a distribution of $40,000 from a Fifth Third bank account. In its final order, the trial court awarded the remaining balance of $20,419 to Wife.

Husband makes an argument that the award should have instead been $17,954, based on the premise that the trial court used the date-of-filing value for this account. But nothing in the trial court's order indicates that it used the date-of-filing value for this particular asset. To the contrary, the math suggests that the court used the value as of the end of the final hearing, which, according to Husband's own exhibit, was $100,419. *See* Appellant's App. Vol. II p. 145. After the two distributions of $40,000, then, the balance was $20,419, which is exactly what the trial court awarded to Wife. As Wife observes, using the later value was reasonable because the account continued to receive rental income until the final hearing date. *See id.* at 28 ("The Court concludes it is reasonable to value the marital property as close to the filing date as possible, **with the exception of certain bank accounts that were used by the parties during the provisional period**." (emphasis added)). We see no abuse of discretion.[3]

## C. 529 accounts

[19] Husband also argues that the trial court erred by awarding him 529 college-savings accounts that the parties established for their grandchildren. He

---

[3] In its March 2017 provisional order, the trial court ordered the parties not to withdraw money from this account without a joint agreement. Notwithstanding that order, Husband withdrew $2,500 from the account without Wife's consent "to pay his expert real estate appraisal fee[.]" Appellant's App. Vol. II p. 40. Wife asked Husband to return the funds, but Husband did not. In the final decree, the trial court found Husband in contempt for this withdrawal and concluded that Wife is entitled "to reimbursement of half of the $2500," or $1,250. *Id.* On appeal, Husband doesn't dispute that he withdrew the money, the contempt finding, or the order to pay Wife $1,250. However, he contends that the trial court should have separately credited him for that $1,250 in its calculation and division of the marital estate. But we think the trial court adequately dealt with Husband's improper withdrawal by valuing the Fifth Third account as of the date of the final hearing, **after** Husband made the withdrawal.

contends that the accounts "should not be included in the award to either party, but should be set aside for the educational expenses of the parties' four (4) grandchildren as was intended when the parties contributed to the accounts." Appellant's Br. p. 32.

[20] In support of this proposed treatment, he cites our decision in *D.G. v. S.G.*, 82 N.E.3d 342 (Ind. Ct. App. 2017), *trans. denied*. There, a husband and wife set up 529 accounts for their children, and when they divorced, the trial court assigned the accounts to the wife. Wife appealed, and we reversed, explaining:

> [T]he trial court treated the accounts as Mother's separate property in the distribution. This is not consistent with the uncontroverted evidence that the 529 funds were solely to be used as college funds for Children. Although the trial court might order one or both parents to act as custodian, neither parent requested the power or right to liquidate the funds or use them for any purpose other than education expenses. On remand, the trial court should set aside the 529 accounts before valuing the distribution to either parent or ordering an equalization payment.

*Id.* at 353. Husband asserts that this case is similar to *D.G.* because both parties presented evidence that the accounts "were intended for the use of the parties' four (4) grandchildren for the payment of their educational expenses." Appellant's Br. p. 31.

[21] We agree with Wife that *D.G.* is distinguishable. Here, as Wife notes, there is "significant evidence of the Husband's behavior in dissipating the marital estate and moving assets without the Wife's permission," Appellee/Cross-Appellant's

Br. p. 33, creating a concern that he might do something similar with the 529 accounts (since they are in his name). In *D.G.*, on the other hand, there was no indication that the spouse who controlled the 529 accounts had engaged in any such behavior, so simply setting aside the accounts was a proper resolution. Given this distinction, Husband has failed to convince us that the trial court abused its discretion by awarding the 529 accounts to him.

## D. Kentucky Lake property

Finally, Husband argues that the trial court erred in its disposition of property the parties own at Kentucky Lake (a condo and related items). The trial court ordered Husband to sell the property, to "pay to Wife 60% of the sale proceeds of the Kentucky assets after closing costs and realtor's commission, if any," and to "pay for the taxes associated with the sale of these assets." Appellant's App. Vol. II pp. 31-32. Husband contends that the court erred by (1) making him responsible for any tax liability that arises from the sale of the property and (2) failing to provide for the payment of expenses incurred until the property is sold (e.g., utilities, homeowners-association dues, maintenance, property taxes). However, Wife asserts, with no dispute from Husband, that these claims are without merit because Husband "failed to present any evidence as to what the maintenance and upkeep costs were, and further failed to present any evidence as to the tax liability of which he now complains." Appellee/Cross-Appellant's

Br. p. 34. We agree. Given this lack of evidence, we cannot say that the trial court abused its discretion on these two issues.[4]

# II. Wife's Cross-Appeal

[23] In her cross-appeal, Wife contends that the trial court erred by not ordering Husband to provide security for the equalization payment. Wife relies on Indiana Code section 31-15-7-8, which provides that in a property-division order the trial court "may provide for the security, bond, or other guarantee that is satisfactory to the court to secure the division of property." We review a trial court's decision under this statute for an abuse of discretion. *Birkhimer v. Birkhimer*, 981 N.E.2d 111, 127 (Ind. Ct. App. 2012), *reh'g denied*.

[24] Wife argues that an order for security under Section 31-15-7-8 is necessary because "the Husband's conduct demonstrated an obstinance and penchant for avoiding payments to the Wife." Appellee/Cross-Appellant's Br. p. 36. However, we have held that the language of Section 31-15-7-8 affords trial courts "the broadest possible discretion" in requiring security for the payment of the division of marital property and that "we will not substitute our judgment for that of the trial court." *In re Marriage of Davis*, 182 Ind. App. 342, 350, 395 N.E.2d 1254, 1259 (1979). Moreover, Wife acknowledges that she has a lien

---

[4] Husband cites one case in this part of his brief: *Keown v. Keown*, 883 N.E.2d 865 (Ind. Ct. App. 2008). As Husband notes, we held in *Keown* that the cost of future repairs was properly included in the costs of sale of a marital residence. In that case, however, the wife "admitted into evidence a detailed proposal from an industrial service contractor estimating the total cost of the repairs to be $1,972." *Id.* at 870. Again, Husband fails to direct us to any such evidence in this case.

against Husband pursuant to the general judgment-lien statute, Indiana Code section 34-55-9-2, and she fails to explain why that lien offers insufficient security. Finally, Wife does not dispute Husband's assertion that the parties "have significant marital assets which are more than sufficient to satisfy the trial court's division of marital property between the parties." Appellant's Reply Br./Cross-Appellee's Br. p. 19. For these reasons, we will not disturb the trial court's decision on this issue.

Affirmed.

Riley, J., and Bradford, J., concur.