## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 17 2016, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael H. Michmerhuizen
Barrett McNagny LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Michael A. Setlak
Perry D. Shilts
Shilts & Setlak LLC
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re:  The Marriage of
Robin R. Phillips,

*Appellant-Respondent,*

v.

Thomas R. Lloyd,

*Appellee-Petitioner.*

November 17, 2016

Court of Appeals Case No.
90A05-1605-DR-1221

Appeal from the Wells Circuit Court

The Honorable Kenton W. Kiracofe, Judge

Trial Court Cause No.
90C01-1504-DR-40

**Bailey, Judge.**

# Case Summary

Robin Phillips ("Wife") appeals the trial court's valuation and division of the marital estate following the dissolution of her marriage to Lloyd Phillips ("Husband").

We affirm in part, reverse in part, and remand with instructions.

# Issues

Wife raises multiple issues on appeal, which we consolidate and restate as:

I.      Whether the trial court abused its discretion in valuing the marital estate; and

II.     Whether the trial court abused its discretion in dividing the marital estate.

# Facts and Procedural History

Prior to marrying in 2006, Wife and Husband were in a live-in relationship for several years. In November 2001, Wife purchased a home that would later become the marital residence ("Marital Residence"). Because the Marital Residence needed repairs, Wife and Husband waited to move in together. Over the next few months, they worked on the home together and began cohabitating there around March 2002. Wife paid the mortgage and the household bills.

When Wife and Husband began living together, each had certain personal assets. Among them, Wife owned a restaurant, which she purchased in 1997

("Restaurant"), and a rental property in Zanesville, which she purchased in 1999. Husband owned a home and had money in a 401(k).

[6] While Wife and Husband were cohabitating, but before they married, Husband sold his home and gave some of the proceeds to Wife. During their cohabitation, Wife purchased a rental property in Huntington ("Huntington Rental").

[7] Wife and Husband married on January 31, 2006. During the marriage, Wife purchased two additional rental properties in Zanesville (we refer to the three properties in Zanesville collectively as the "Zanesville Rentals").

[8] Throughout the relationship, Husband was employed and earned between $30,000 and $35,000 per year since 2011. Toward the end of the relationship, Wife earned around $200 per week from the Restaurant, or around $10,400 per year. The parties kept separate accounts but would exchange money. When Husband received paychecks, he would give Wife money to pay bills. Neither kept an accounting of the money they exchanged. Once they married, Husband paid for Wife's health insurance. Each year, they filed joint tax returns, and Wife received the refunds.

[9] Before and during the marriage, Wife and Husband were engaged in buying and selling goods together. The venture involved purchasing goods at auctions and attending flea markets, shows, and swap meets. They also sold goods on eBay. Husband withdrew money from his 401(k) to purchase a trailer as well as

goods for the buying and selling venture. Any proceeds from the venture went to Wife and toward purchasing more goods.

[10] Wife and Husband also "flipped" properties together. Wife purchased the properties in her name and Husband helped renovate them. Sometimes, they rented the properties; sometimes they sold the properties outright. Wife paid for the properties and received the income whereas Husband contributed labor and equipment toward the properties. Husband also contributed labor and equipment to the Restaurant, where Wife would allow Husband to eat for free.

[11] During the relationship, Wife incurred credit card debt and eventually negotiated a settlement amount. To pay the settlement, Wife borrowed money from her mother, Melba Edwards ("Edwards"). Wife borrowed additional money from Edwards to pay off debt associated with the Restaurant.

[12] In April 2015, Wife sold the Zanesville Rentals. Shortly after the sale, Husband filed a Petition for Dissolution of Marriage on April 22, 2015. Around this time, Wife paid debts using proceeds of the sale along with other assets.

[13] The parties entered into a mediated partial settlement agreement, which left to the trial court the division of all real estate and debts. Following a hearing on February 24, 2016, the trial court suggested that the parties tender proposed findings and conclusions, which they did. On April 28, 2016, the trial court entered its findings, conclusions, and order of dissolution of marriage. In so doing, the trial court adopted Husband's proposals verbatim.

The trial court purported to order an equal division of the marital estate. Based on the trial court's valuation, Wife was to pay a $49,675.00 equalization payment to Husband. The trial court further ordered that if Wife did not pay the judgment within thirty days, Wife was to sell or eventually auction certain real estate. The order did not allocate any sale or auction costs to Husband.

Wife now appeals.

# Standard of Review

Here, as permitted by Indiana Trial Rule 52(A), the trial court entered findings of fact *sua sponte*. Our court will "not set aside the [trial court's] findings or judgment unless clearly erroneous . . . ." Ind. Trial Rule 52(A). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A trial court's judgment is clearly erroneous if "its findings of fact do not support its conclusions of law or . . . its conclusions of law do not support its judgment." *Id.* Where, as here, the trial court adopts verbatim a party's proposed findings and conclusions, it does not alter our standard of review. *See Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003). However, the practice "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Id.* (citing *Prowell v. State*, 741 N.E.2d 704, 708-09 (Ind. 2001)).

Here, Wife raises challenges to the trial court's valuation and division of the marital estate. We review such challenges under an abuse of discretion standard. *Quillen*, 671 N.E.2d at 102; *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002). The trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it, including the reasonable inferences to be drawn therefrom. *Quillen*, 671 N.E.2d at 102; *Taylor v. Taylor*, 436 N.E.2d 56, 58 (Ind. 1982). We do not weigh the evidence, but will consider the evidence in a light most favorable to the judgment. *Quillen*, 671 N.E.2d at 102; *Fobar*, 771 N.E.2d at 59.

# Discussion and Decision

## Valuation of the Marital Estate

Wife contends that the trial court abused its discretion in valuing the marital estate. In asserting error, Wife points to the trial court's (1) handling of debts paid following the sale of the Zanesville Rentals; (2) omission of an undisputed mowing bill; and (3) valuation of the Huntington Rental.

Under Indiana Code Section 31-15-7-4(a), a trial court must include all marital property in the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse before final separation, or acquired by their joint efforts. "Marital property includes both assets and liabilities." *Birkhimer v. Birkhimer*, 981 N.E.2d 111, 120 (Ind. Ct. App. 2012). Although the trial court has "broad discretion in ascertaining the value of property in a dissolution action," *Quillen*, 671 N.E.2d at 102, the trial court

generally has no authority to exclude or set aside any assets or liabilities of the parties, and it must divide all property and debts. *Birkhimer*, 981 N.E.2d at 120.

[20] Starting with the Zanesville Rentals, Wife sold the properties in April 2015, just prior to Husband's initiation of the dissolution proceedings. The parties agree that, after costs associated with the sale, Wife netted $49,403.00. Wife alleges that she used all of the proceeds, along with additional assets, to pay debts. Among those debts, Wife paid $38,000.00 to Edwards.[1] The original balance of the Edwards loan was $45,943.00.

[21] In its order, the trial court identified the $49,403.00 in proceeds as an asset. The order also identified the Edwards loan balance as $45,943.00—the original, unreduced amount, which would offset $38,000 of the proceeds. Wife points out, however, that she spent a total of $51,461.50 toward reducing debt, thus spending $13,461.50 more than the $38,000.00 payment on the Edwards loan. Although the trial court's calculation offsets the $38,000.00 payment on the Edwards loan, the trial court did not account for the other potential offsets.

[22] At the hearing, Husband challenged the amount paid to Edwards:

> Q.   Okay. So the debt to her mother of $38,000.00 is what you don't agree to?

---

[1] Wife complains that the trial court erred in finding that it was "obvious that Wife had only paid [Edwards] in anticipation of the divorce proceedings," (Appellant's App. Vol. II at 12), but establishes no basis upon which the alleged error prejudiced her. We accordingly do not address her argument in this respect. *See* T.R. 61.

A.    Yes.

Q.    Okay.  But everything else of the bills that she paid, you agree to?

A.    Yes.

(Tr. at 47.)  However, in Husband's proposed findings and conclusions—which the trial court adopted—Husband nevertheless (1) accounted for the full amount owed to Edwards, which encompassed the previously disputed $38,000 payment; and (2) omitted the remaining debt that Husband did not earlier dispute.  Husband does not now contest the amount of the Edwards loan and Husband does not directly address the remaining non-Edwards debt.

The trial court must divide all marital property.  Ind. Code § 31-15-7-4(a).  In valuing the marital estate, it was illogical for the trial court to fully account for the Edwards loan, which Husband had initially disputed, yet to exclude the non-Edwards debt that Husband agreed to at the hearing.  Accordingly, we find that the trial court abused its discretion in excluding the additional debt paid following the sale of the Zanesville Rentals in its valuation of the marital estate.

Similarly, Wife points to an undisputed $774.00 mowing bill that was not included in the trial court's calculation and which Husband now concedes was error.  Husband invites us to avoid disturbing the trial court's judgment because the amount of the bill was *de minimus*.  However, in light of the existing valuation error, and Husband's concession of error as to the mowing bill, on remand the trial court should include this bill in the marital pot.

[26]   We turn next to the trial court's valuation of the Huntington Rental. The trial court determined that the value of the Huntington Rental was $17,500.00. In reaching this value, the trial court used a June 24, 2015 appraisal showing the value was $28,000.00 and subtracted a mortgage balance of $10,500.00. Wife baldly contends that the trial court should have instead used a mortgage balance of $10,971.05. However, the portions of the record that Wife directs us to do not provide support for that figure. The argument section of the appellant's brief must "contain the contentions of the appellant on the issues presented, supported by cogent reasoning," along with citations to the authorities, statutes, and parts of the record relied upon. Ind. Appellate Rule 46(A)(8)(a). Failure to comply with this rule results in waiver of the argument on appeal. *See Reed v. Reid*, 980 N.E.2d 277, 297 (Ind. 2012) (finding waiver when an argument failed to conform to Indiana Appellate Rule 46(A)(8)(a)). Moreover, this Court does not sift through a record to locate error so as to state an appellant's case for her. *Wright v. Elston*, 701 N.E.2d 1227, 1230 (Ind. Ct. App. 1998), *trans. denied*. Because Wife's argument is undeveloped, the issue is waived for review.

[27]   In sum, we find that the trial court abused its discretion by omitting two undisputed marital debts when valuing the marital estate, which were the non-Edwards debts paid following the sale of the Zanesville Rentals and the $774.00 mowing bill. We instruct the trial court to account for these marital debts in reaching its valuation of the marital estate.

# Division of the Marital Estate

[28] Wife also argues that the trial court erred in dividing the marital estate. She focuses on whether the trial court abused its discretion in (1) ordering an equal division of the marital estate and (2) not requiring Husband to share in potential sale or auction costs incurred as a result of the trial court's order.

[29] Indiana law requires that marital property be divided "in a just and reasonable manner," I.C. § 31-15-7-4(b), and provides for the statutory presumption that "an equal division of the marital property between the parties is just and reasonable." I.C. § 31-15-7-5. This presumption, however, may be rebutted by a party who presents relevant evidence, including evidence of the following factors:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> > (A) before the marriage; or
> >
> > (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

> (A) a final division of property; and

> (B) a final determination of the property rights of the parties.

*Id.*

[30] In dividing marital property, the trial court must consider all of the statutory factors, but it is not required to explicitly address all of the factors in every case. *Eye v. Eye*, 849 N.E.2d 698, 701-02 (Ind. Ct. App. 2006). A party challenging the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Campbell v. Campbell*, 993 N.E.2d 205, 212-13 (Ind. Ct. App. 2013), *trans. denied*. Moreover, we are to consider the trial court's disposition "as a whole, not item by item." *Fobar*, 771 N.E.2d at 59. We recognize that

> in crafting a just and reasonable property distribution, a trial court is required to balance a number of different considerations in arriving at an ultimate disposition. The court may allocate some items of property or debt to one spouse because of its disposition of other items. Similarly, the factors identified by the statute as permitting an unequal division in favor of one party or the other may cut in different directions. As a result, if the appellate court views any one of these in isolation and apart from the total mix, it may upset the balance ultimately struck by the trial court.

*Id.* at 60.

[31]     Here, in determining that Wife failed to rebut the presumption that an equal division was just and reasonable, the trial court found:

> [T]he parties cohabitated for four to five years prior to the marriage. Both parties contributed financially, and property and money was comingled by way of sales of real and personal property. While Wife argues she contributed more than Husband did during the period of cohabitation and during the marriage, Husband always maintained full-time employment. He also provided health insurance for the parties and performed contributed [sic] his services to the rental properties and business.

(Appellant's App. Vol. II at 11.) The trial court further concluded:

> Deviating from the statutory presumption or excluding some of this property from the marital estate would not be just and proper given that it had all been comingled with other marital property. Further, all property, real and personal, was used to pay down marital debts, some of which Wife considered her individual debt. Wife has not rebutted the presumption of an equal division of assets and debts.

(Appellant's App. Vol. II. at 12.)

[32]     Wife asserts that she rebutted the presumption of an equal division of assets and debts. In arguing that the factors supported an unequal division, Wife points to specific assets she purchased prior to the marriage, namely, (1) the Restaurant where she earns her income; (2) the Marital Residence, which she purchased while the parties were cohabitating prior to marriage; and (3) certain rental properties, including the Huntington Rental. Wife would also set aside the

proceeds from the sale of the three Zanesville Rentals, one of which she purchased prior to any relationship with Husband. Wife emphasizes that these assets were in her name and that she made all of the payments associated with them. Wife also observes that due to her economic circumstances at the time of the disposition, she would be forced to liquidate assets to satisfy the payment, leaving her with significantly fewer assets than she had prior to the parties' cohabitation and marriage. Wife observes that whereas she may ultimately need to liquidate the Restaurant, her source of income, to satisfy the equalization payment, Lloyd would leave the marriage with "a substantial cash position with his livelihood intact." (Appellant's Br. at 24.)

[33] In arguing that the trial court erred, Wife posits that the present case is analogous to both *In re Marriage of Marek*, 47 N.E.3d 1283 (Ind. Ct. App. 2016), *trans. denied*, and *Doyle v. Doyle*, 756 N.E.2d 576 (Ind. Ct. App. 2001). In *Marek*, this Court reversed the trial court's equal division of the marital estate where "the findings made by the trial court and nearly all the statutory factors listed favor[ed] an unequal distribution of the marital estate. No findings support[ed] an equal division." *Marek*, 47 N.E.3d at 1292. In *Doyle,* we found error when the trial court considered the appreciation of certain assets belonging to the wife to be a marital asset. There, the pertinent accounts were solely in the wife's name and were wholly untouched since the wife had deposited personal injury settlement money into them eleven years prior to the parties' four-year marriage. Neither of the parties had contributed marital assets to the accounts.

[34] Both *Marek* and *Doyle* are distinguishable. Unlike in *Marek*, here, the trial court made findings that supported an equal division of the marital estate. The trial court noted Husband's contributions to the rental properties and the Restaurant, his funding of the parties' health insurance, and the extent to which the parties commingled "property and money . . . by way of sales of real and personal property," (Appellant's App. Vol. II at 11). The trial court further observed that "all property, real and personal, was used to pay down marital debts, some of which Wife considered her individual debt." (Appellant's App. Vol. II at 12.) Thus, unlike in *Doyle*, the assets were not wholly sequestered and there were marital contributions to them.

[35] Wife separately takes issue with the trial court's finding that the parties commingled money and property because the properties were in her name, she paid the bills, and the parties kept separate accounts. However, the evidence favoring the judgment supports the finding of commingling. Moreover, although wife also takes issue with the trial court's consideration of the parties' conduct during their period of premarital cohabitation, this Court has consistently indicated that a trial court may, but is not required to, consider periods during which couples cohabitate prior to their marriage when dividing the marital estate. *See Hendricks v. Hendricks*, 784 N.E.2d 1024, 1027 (Ind. Ct. App. 2003); *Chestnut v. Chestnut*, 499 N.E.2d 783, 787 (Ind. Ct. App. 1986).

[36] In summary, then, we cannot say that the trial court abused its discretion in equally dividing the marital estate.

[37] We turn next to Wife's final contention, which is that the trial court abused its discretion by not requiring Husband to share in potential sale or auction costs incurred as a result of the trial court's order. In carrying out its equal division of the marital estate, the trial court ordered that Wife make an equalization payment to Husband within thirty days. The pertinent part of the order provides as follows:

> If Wife does not pay the judgment in full, then [the Marital Estate] shall be listed for sale for a period not to exceed three (3) months. If the property does not sell within that time period, then the property shall be placed for auction. After expenses of the auction have been paid, Husband shall be paid from the proceed[s] of that sale up to the amount of the equalization judgment in his favor. If the proceeds do not satisfy the equalization judgment owed to Husband, then Wife shall immediately sell the [Huntington Rental] and use the proceeds of that sale to compensate Husband for any shortfall in the judgment owed to him. If that property is not sold within three months from the date it has been listed for sale, that property shall be placed for auction.

(Appellant's App. Vol. II at 13.)

[38] Wife challenges the trial court's failure to allocate potential sale or auction costs to Husband. Wife argues that because the order requires her to sell or auction property within thirty days if she is unable to pay the judgment, the order's potential effect would be to reduce her equal share. Thus, Wife essentially argues that one outcome of the order is a deviation from an equal division of the marital estate in Husband's favor.

[39]     Wife directs our attention to *Keown v. Keown*, 883 N.E.2d 865 (Ind. Ct. App. 2008). In *Keown*, the trial court ordered the wife to sell the marital residence and had heard evidence regarding the costs of the sale. The trial court factored those costs into its valuation of the marital estate, which husband alleged was error. In resolving *Keown*, we looked to *Dowden v. Allman*, 696 N.E.2d 456, 458 (Ind. Ct. App. 1998). In *Dowden*, we found error when a trial court never ordered the sale of real estate but nevertheless included costs of sale in its valuation. Although there was error in *Dowden*, we did not find error in *Keown*, reasoning that "because the trial court ordered [the wife] to sell the marital residence, it did not abuse its discretion by reducing the property's value by the costs of sale because those costs were a direct result of the disposition and were based on evidence presented at the hearing." *Keown*, 883 N.E.2d at 870.

[40]     *Keown* and *Dowden* are inapposite here. Together, *Dowden* and *Keown* would suggest that it is within a trial court's discretion to include evidence-based costs within the contingency portion of an order such as this one. Here, however, Wife is challenging the trial court's omission of those costs, alleging that the omission amounts to error. Unlike in *Dowden*, here the trial court's order did provide for a potential sale or auction. Although the sale or auction was a contingency, turning on Wife's ability to pay the equalization payment within thirty days, a court-ordered sale or auction was nevertheless one potential outcome of the order. In contrast to *Keown*, however, here there was no evidence of precisely what the sale or auction costs would be. Yet, at the hearing, both Wife and Husband did acknowledge that, should there be a sale

of property, there would be costs. (Tr. at 48, 93.) Husband stated that, to some extent, he was willing to share in those costs. (Tr. at 48.) Moreover, it was not in dispute that due to Wife's financial circumstances, she would be unable to pay an equalization payment without selling real estate. (Tr. at 42, 93.)

[41] We find that, under these facts and circumstances—where the undisputed evidence is that there would be costs following the sale of real estate, that Wife would necessarily sell real estate to satisfy an equalization payment, and that Husband would be willing to share in those costs to some extent—the trial court abused its discretion by allocating those costs solely to Wife when crafting a contingency in its order that mandated the sale or auction of real estate. This is because, under these facts, the trial court's failure to include costs resulted in one potential outcome of its order being a deviation in favor of Husband. The outcome would be a deviation because it would effectively reduce Wife's marital share while preserving Husband's. "A trial court may deviate from an equal division so long as it sets forth a rational basis for its decision." *Campbell*, 993 N.E.2d at 212. Here, Husband argued only for an equal division of the marital estate and the trial court, by its order, intended to carry out an equal division of the marital estate. Thus, the potential deviation in favor of Husband was against the logic and effect of the facts and circumstances before the court. To achieve a just and reasonable result, on remand we instruct the trial court to account for the existence of costs incurred as a result of the contingency in the trial court's order, and order that Husband and Wife share those costs.

# Conclusion

[42] The trial court erred in valuing the marital estate. Although the trial court did not abuse its discretion in ordering an equal division of the marital estate, the trial court abused its discretion in omitting a potential cost when giving effect to its equal division of the estate.

[43] Affirmed in part, reversed in part, and remanded with instructions.

Riley, J., and Barnes, J., concur.